UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

TERRENCE BERNARD DARBY,

                Plaintiff,                Case No. 2:16-cv-158

v.                                            Honorable Gordon J Quist

SHANE PLACE, et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Terrence Bernard Darby, a state prisoner currently incarcerated at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Shane Place, Former Warden Thomas Mackie, Deputy Warden

Daniel Lesatz, Former Warden Gregory McQuiggin, Deputy Warden Kenneth Tribley, Assistant Deputy Director of the MDOC Lloyd Rapelje, Resident Unit Manager William Jondreau, Former Warden Gary Capello, Former Warden Michael Curly, Former Deputy Warden Linda Tribley, Former Assistant Deputy Warden Jeff Larson, Acting Deputy Warden S. Niemi, and Regional Prison Administrator Jeri-Ann Sherry.

Plaintiff alleges that in 2004, while he was confined at the Oaks Correctional Facility (ECF), he assaulted an officer by stabbing him in his right eye, which resulted in blindness in that eye. Plaintiff was found guilty of a major misconduct for "Assault Resulting in Serious Physical Injury - Staff Victim." Plaintiff was transferred to the Ionia Maximum Correctional Facility (ICF) and was placed in administrative segregation. On September 16, 2004, Plaintiff was reclassified to administrative segregation because he posed a "serious threat to the physical safety of others."

Plaintiff remained at ICF in administrative segregation until August of 2007. During this time, Plaintiff remained misconduct free and received consistently positive reports on his monthly review form. Plaintiff also participated in a pilot in-house anger management group and met with psychologist Jane Nannberg at least once a month to work on his violent impulses. On June 20, 2006, ICF Assistant Deputy Warden J. Prelesnik approved a staff request to reclassify Plaintiff to the general population, stating that Plaintiff showed true remorse and had been ticket free for nearly two years. However, the request was disapproved by officials further up the chain of command.

On June 19, 2007, Plaintiff was transferred from ICF to the Alger Correctional Facility (LMF), where Plaintiff continued on administrative segregation status. Plaintiff was transferred to AMF in August of 2007, where he continued on administrative segregation status due to the seriousness of his 2004 misconduct. From August of 2007 to August of 2008, Defendants

McQuiggin, Tribley, Jondreau, and Larson chaired the monthly Security Classification Committee (SCC) meetings and continually refused to release Plaintiff to the general population. The only reason given for the decision to keep Plaintiff in administrative segregation was the "nature of the offense" for which he had been classified to administrative segregation.

From September of 2008 to December of 2010, Defendant Capello became involved with the SCC review of Plaintiff's security classification status, along with Defendants McQuiggin, Tribley, Jondreau, and Larson. From June of 2011 through March of 2012, Defendants Curly, Place, McQuiggin, Tribley, Jondreau, and Larson all conducted SCC interviews of Plaintiff's classification status. From April of 2012 until the present, Defendants Lesatz and Niemi also chaired monthly SCC meetings at various times. Plaintiff was personally interviewed by Defendant Sherry on four occasions, January 7, 2009, January 27, 2010, January 19, 2011, and January 11, 2012. In addition, Plaintiff was personally interviewed by Defendant Rapelje on December 8, 2014, and December 7, 2015. During this entire period, the only reason given for keeping Plaintiff in administrative segregation was the seriousness of the 2004 assault on staff.

From August of 2007 until sometime in 2014, Plaintiff received one-on-one therapy sessions twice a month in order to work on anger management skills and coping strategies. On January 12, 2012, Plaintiff was found guilty of a major misconduct. The original charge of "Possession of a Weapon" was reduced to "Accomplice to Possession of a Weapon" by the Hearing Officer and Plaintiff was sentenced to thirty days each of detention and loss of privileges to be served consecutively. Plaintiff asserts that this is the only misconduct that he has received since he was classified to administrative segregation.

Plaintiff contends that on numerous occasions, housing unit officers have verbally expressed their opinions to the committee that Plaintiff was ready to be reclassified to the general

population. Plaintiff overheard Corrections Officer McIntyre tell the SCC on more than one occasion that Plaintiff was unnecessarily taking up segregation space. However, the SCC continued Plaintiff's administrative segregation status based on the 2004 assault. On September 7, 2015, during Plaintiff's monthly SCC interview, Defendants Lesatz and Niemi advised Plaintiff to start contacting prisoner advocate organizations regarding his continued classification in administrative segregation.

Plaintiff alleges that since September of 2007, the SCC at AMF has reclassified a total of three prisoners who had murdered other inmates from administrative segregation to the general population. Each of these prisoners had spent no more than ten years in administrative segregation, and one prisoner had only spent three years in administrative segregation. Plaintiff claims that during his SCC interview with Defendant Jondreau and Acting Unit Manager J. Burke on February 3, 2016, it was "insinuated" to him that "prisoner lives don't matter." Plaintiff contends that the fact that he is still in administrative segregation on the basis of his 2004 assault on staff shows that he is not receiving "meaningful" review and violates his due process rights. Plaintiff seeks compensatory, punitive, and nominal damages, as well as declaratory and injunctive relief.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff claims that he has been confined in administrative segregation since September of 2004 in violation of his due process rights. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v.*

*Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband

and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Even where a liberty interest is shown, the due process claim "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 126 (1990). The Supreme Court has indicated that "[p]rison officials must engage in some sort of periodic review of the confinement of . . . inmates [in segregation]." *Hewitt,* 459 U.S. at 477 n.9. "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 454 (1985). "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Harris,* 465 F. App'x at 484. In short, where an inmate's confinement in segregation implicates a liberty interest, he is entitled to a "periodic review of his confinement, supported by some evidence or indicia of reliability." *Id.* at 485; *see also Selby*, 734 F.3d at 559-60 (holding that the mere formality of holding reviews is not sufficient; whether a given process is meaningful and adequate is a question of fact).

Assuming without deciding that Plaintiff's confinement is atypical and significant, Plaintiff is unable to show that the State failed to provide due process. The Court notes that Plaintiff concedes that he receives monthly reviews by the SCC regarding his continued confinement in administrative segregation. Plaintiff claims that this review is not meaningful because the only

reason given for the fact that he has not been released from segregation is the nature of his assault on staff in 2004. According to the step I response to grievance AMF 16-01-00121, which is attached to Plaintiff's complaint and is dated February 8, 2016, the seriousness of Plaintiff's conduct in stabbing an officer in the eye necessitates the approval of the Assistant Deputy Director of the MDOC for Plaintiff to be released to the general population. *See* ECF No. 1-2, PageID.15. The step II response states:

> The decision for continued placement [in administrative segregation] is based on several factors; institutional history to include the grievant's assaultive history, interaction with staff, interaction with prisoners and current behavior. The grievant was placed in segregation for an incident where he stabbed a staff member in the eye causing blindness. Lastly, the Security Classification Committee (SCC) determines when the grievant has the potential to honor the trust implicit in a less restrictive confinement and the grievant will remain in Administrative Segregation until he is reclassified by SCC. The grievant is encouraged to remain misconduct free and follow staff direction until that time. In the absence of any additional information in your appeal to support your grievance claim, nothing further is required in response.

*See* ECF No. 1-2, PageID.16.

Plaintiff has failed to show that his confinement in segregation is unsupported by some evidence or indicia of reliability. As noted in the above grievance response, Plaintiff's monthly review by the SCC includes consideration of his interaction with staff and other prisoners, as well as of the seriousness of the 2004 assault. Moreover, despite his assertion to the contrary, Plaintiff's situation is not the same as a prisoner who has killed a fellow inmate. The attack of a prison guard constitutes a greater threat to institutional security than an attack on a fellow inmate because the incapacitation of a prison guard potentially creates an opportunity for escape or for further attacks on prison staff. In addition, such an attack demonstrates a disregard for authority and the inability to comply with prison rules. Therefore, Plaintiff's claim that the seriousness of this

attack is not a legitimate consideration by the SCC lacks merit. Because Plaintiff is receiving regular, meaningful review by the SCC, his due process claim is properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  August 11, 2016                    /s/ Gordon J. Quist
                                        GORDON J. QUIST
                                   UNITED STATES DISTRICT JUDGE